Andrew W. Stavros (8615)
Andrew Fox (16050)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
Email: andy@stavroslaw.com
       fox@stavroslaw.com

*Attorney for Plaintiff Kasey Green*

### IN THE UNITED STATES DISTRICT COURT IN AND FOR

### THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KASEY GREEN, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>PROPERTY MANAGEMENT INCORPORATED FRANCHISE, LLC, a Nevada limited liability company, 1 SOURCE BUSINESS SOLUTIONS, LLC, a Utah limited liability company, and DOES I-X,<br><br>    Defendants. | **COMPLAINT**<br><br>(JURY DEMAND)<br><br><br>Case No.  2:20-cv-00802-TS<br><br>Judge:  Ted Steward |

Plaintiff Kasey Green ("Plaintiff" or "Green"), by and through her undersigned attorney, brings this complaint ("the Complaint") against Property Management Incorporated Franchise, LLC, 1 Source Business Solutions, LLC and DOES I-X, and for causes of action alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff is a resident of Salt Lake County, State of Utah.

1

2. Defendant 1 Source Business Solutions, LLC is a Utah limited liability company with its principal office and place of business in Salt Lake County, Utah ("OneSoure" or "Defendant").

3. OneSource provides payroll, benefit, human resources and risk management services to various companies.

4. Defendant Property Management Incorporated Franchise, LLC is a Nevada limited liability company, with its principal place of business located in Utah County, State of Utah.

5. The true names and capacities of Defendants Does I-X inclusive are currently unknown to Plaintiff and therefore are sued under such fictitious names.

6. Plaintiff is informed and believes, and based upon such information and belief alleged that Defendants sued as DOES I-X inclusive are in some manner responsible for the acts, omissions and damages alleged in this Complaint. As such, Plaintiff will amend this Complaint when the true names and capacities of such fictitiously named Defendants are ascertained.

7. Plaintiff is informed and believes, and based upon such information and belief alleges that at all times mentioned in this Complaint, each Defendant, including certain Defendants sued as Does I-X inclusive, was acting as the agent, employee, attorney, accountant and/or representative of each other Defendant and within the scope of the above-mentioned agency, employment, relationship and/or representation.

8. On information and belief, DOES I-X are various entities affiliated with and/or owned by PMI ("PMI" or "Defendant") that assist it with operating and offering its property management franchising business, and acted as employers of Plaintiff.

9. Defendant PMI, by and through its affiliated entities, and Defendant OneSource, conduct business as property marketing, tenant screening, rent collection and property maintenance and financial reporting services for residential management, association management and short-term rental management properties.

10. Plaintiff has exhausted her administrative remedies, having filed a charge of gender/pregnancy discrimination and retaliation with the Utah Labor Commission and Equal Employment Opportunity Commission and obtained a right to sue letter dated October 19, 2020 from the Equal Employment Opportunity Commission.

11. This Court has jurisdiction pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) ("Title VII"), from claims arising from the actions of Defendants in violation of Title VII.

12. The employment practices alleged to be unlawful were committed in Utah County, State of Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division of Utah.  Accordingly, venue is proper pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391.

13. At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. §2000e(f).

14. At all times relevant to this Complaint, Defendants were each an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

15. Plaintiff is female and was pregnant at the time she was subjected to discrimination and retaliation by Defendants.

16. In or about March 2017, Plaintiff was hired by the Defendants as a Compliance Coordinator and was later promoted to the position of Compliance Director.

17. By all accounts, during her employment with Defendants Plaintiff met or exceeded her employers' expectations, including obtaining impeccable performance reviews and was otherwise not subjected to any disciplinary actions prior to the events set forth herein.

18. On or about July 11, 2019 Plaintiff informed her direct supervisor of her pregnancy. Prior to informing her supervisor of her pregnancy, Plaintiff was not subjected to any discipline and had been regularly commended for her work performance.

19. On or about July 12, 2019, Plaintiff's supervisor announced in a company-wide meeting that Plaintiff was pregnant. At this same meeting, Plaintiff's supervisor informed staff that Plaintiff had met and/or exceeded all her work goals.

20. After announcing her pregnancy, Plaintiff's supervisor began to treat Plaintiff differently than her colleagues, including holding her to a different standard in the terms and conditions of her job duties and expectations

21. On or about July 23, 2019, Plaintiff met with her supervisor and was told that she needed to "be perfect at all times" and specifically stated that there were two (2) instances where Plaintiff had "not been perfect."

22. Plaintiff immediately responded to the allegations that were brought up by her supervisor and showed her supervisor why her claims of two instances of not being perfect were incorrect.

23. On or about August 14, 2019, Plaintiff's supervisor unilaterally changed Plaintiff's previous schedule that previously allowed her to work twenty (20) hours from home and (20) hours at the office, with flexible office hours, and told Plaintiff that she would no longer

be flexible and Plaintiff was required to report to work at 8:30 a.m. beginning on October 1, 2019.

24. Plaintiff's supervisor also threatened Plaintiff and told her that if she did not accept the schedule change she would withhold Plaintiff's $1,000.00 monthly bonus. Specifically, on or about October 4, 2019 Plaintiff's supervisor mandated that Plaintiff's schedule change to a Monday through Friday schedule, from 8:30 a.m. – 5:00 p.m. as of October 1st, and threatened to stop her monthly $1000 bonus if she did not accept the new requirement. In response, Plaintiff complained that Plaintiff's supervisor's treatment had changed drastically since Plaintiff announced her pregnancy.

25. During her pregnancy, Plaintiff was diagnosed with Pregnancy Induced Syncope which caused her to unexpectedly lose consciousness.

26. On or about September 30, 2019, Plaintiff experienced an episode of syncope while at work. During the episode, Plaintiff fell and injured her foot.

27. Plaintiff sought care from a medical provider. Plaintiff was diagnosed with a nondisplaced avulsion fracture of the right talus in her foot.

28. On or about October 1, 2019, Plaintiff informed her supervisor of her workplace injury and stated that she would be late to work because of the injury, including her immobilization, the requirement to use a scooter, and provided proof of her diagnosis from her medical provider.

29. Upon arriving at work, Plaintiff's supervisor mentioned to Plaintiff that she was disappointed Plaintiff had not attended an elective company summit the prior weekend, even though her supervisor had previously informed her she did not need to attend the summit.

30. Plaintiff requested information related to her options for short-term disability benefits and/or filing a workers' compensation claim from her supervisor. In response, she was told by her supervisor that she "could not file a claim" for workers' compensation.

31. Following the conversation, Plaintiff contacted the Utah Labor Commission to request information about filing a workers' compensation claim and her eligibility for filing a claim. Plaintiff was informed by the Utah Labor Commission that she, in fact, could file a workers' compensation claim.

32. On or about October 4, 2019, Plaintiff's supervisor told Plaintiff to "pack my things to move out of the office" and provided no explanation for Plaintiff being required to vacate an office that she had for nearly all of her employment. In response, Plaintiff pointed out how hard the change would be with her pregnancy and broken foot and complained to her supervisor that she felt this was happening because of her pregnancy and injury. Plaintiff's supervisor, in return, had no response.

33. On or about October 10, 2019, Plaintiff informed her supervisor that she intended to file a workers' compensation claim. In response, Plaintiff's supervisor once again falsely asserted that Plaintiff could not file a claim, and became visibly upset that Plaintiff was attempting to exercise her rights to file such a claim. When Plaintiff continued to insist that she be able to file a claim, Plaintiff's supervisor contacted a representative from OneSource to further discuss the matter.

34. Plaintiff's supervisor later contacted Plaintiff that evening and informed her that she was "wrong," and that Plaintiff could file a claim and the Defendants would initiate the process of filing her workers' compensation claim. However, Plaintiff's supervisor told Plaintiff

she could not return to work until she was cleared by her doctors, including her podiatrist and her obstetrician. Accordingly, Plaintiff was then placed on a mandatory leave of absence.

35. On or about October 28, 2019, Plaintiff returned to work.

36. On or about November 6, 2019, Plaintiff met with her supervisor and was given a Performance Improvement Plan ("PIP") with no prior warning concerning any performance deficiency. Plaintiff requested to document her appeal of the PIP, but her request was denied and she was given an unsigned copy of the PIP.

37. During the meeting, Plaintiff's supervisor alleged that Plaintiff had been given several warnings related to her attendance and performance. These allegations were demonstrably false.

35. The PIP also falsely alleged that Plaintiff was in violation of the attendance policy, and alleged that Plaintiff had been arriving to work between 8:45 a.m. and 9:00 a.m., approximately 15-30 minutes later than she was supposed to arrive for her shift.

36. The PIP also falsely alleged that Plaintiff had not been accurate in her work and had made several errors on documentation related to Defendants' franchise agreements.

37. Plaintiff was also denied her monthly bonus as permitted in her employment agreement.

38. Following the meeting, Plaintiff was placed on probation and the PIP provided her with approximately thirty (30) days to improve her performance and attendance otherwise she would be subject to termination.

39. On or about October 31, 2019, Plaintiff contacted the Utah Labor Commission to see if, in fact, a claim for workers' compensation claim had been filed by Defendants. Plaintiff was informed a claim had not, in fact, been filed.

40. On or about November 1, 2019, Plaintiff was contacted by the Utah Labor Commission and notified that her workers' compensation claim had been filed and received by the Labor Commission.

41. On or about November 13, 2019, Plaintiff's supervisor once again accused Plaintiff of making mistakes on documentation. These allegations were also demonstrably false.

42. Plaintiff requested documentation and other information to support her supervisor's claims. However, Plaintiff's supervisor failed to corroborate any of her claims or to provide any information to Plaintiff substantiating any of the allegations.

43. Regardless of the retaliation and discrimination Plaintiff was being subjected to, she continued to abide by the terms of the PIP.

44. Even though the PIP was retaliatory and false, Plaintiff made every effort to comply with the PIP.

45. Despite her efforts to follow the terms of the PIP, on or about November 15, 2019, Plaintiff met with her supervisor and was informed that she was being terminated from her employment, effective immediately.

46. Prior to announcing her pregnancy, and reporting her workplace injury and exercising her right to file a workers' compensation claim, Plaintiff was regarded as a top performer and did not otherwise have any attendance or performance deficiencies.

47. Furthermore, after suffering from a workplace injury, Plaintiff was retaliated against and ultimately subjected to adverse action by being placed on a PIP, having her monthly bonus withheld and being wrongfully terminated from her employment.

48. As such, the Defendants knowingly and intentionally sought to terminate Plaintiff from her employment because of her pregnancy and/or exercising her rights to report a workplace injury.

## FIRST CAUSE OF ACTION
### (Gender/Pregnancy Discrimination in Violation of Title VII of the Civil Rights Act)

49. Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

50. Plaintiff is a female and was pregnant at the time she was subject to discrimination by the Defendants.

51. Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), prohibits an employer from discharging any individual or otherwise discriminating against any individual with respect to their compensation, terms, conditions or privileges of employment because of sex.

52. Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(k), defines the terms "because of sex" or on the "basis of sex" to include because of or on the basis of pregnancy, childbirth, or related medical conditions and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment purposes.

53. The adverse employment actions taken against Plaintiff as set forth above, including Plaintiff's termination, were motivated by Plaintiff's sex.

54. Defendants' actions have directly and proximately caused Plaintiff substantial past and future economic loss, including lost wages and benefits, as well as compensatory damages, including non-pecuniary losses for damages to her career and professional reputation, humiliation, pain, and suffering, and emotional distress in an amount to be determined at trial.

55. Defendants' unlawful conduct toward Plaintiff in violation of Title VII was done

intentionally and/or maliciously, or in reckless disregard for her federally protected rights, entitling Plaintiff to an award of punitive damages in an amount to be proved at trial.

56. Plaintiff is also entitled to her reasonable expenses and attorneys' fees pursuant to Title VII, and such further an additional relief as may be available under the law, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII of the Civil Rights Act)

57. Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

58. Title VII prohibits retaliation against any employee for engaging in opposition to discrimination and harassment on the basis of sex.

59. Plaintiff engaged in protected activity by notifying her supervisor of her pregnancy and need for pregnancy-related leave, and complaining about and opposing the treatment she received to management-level employees who had a duty to take action in response to Plaintiff's complaints.

60. The actions of Defendants in terminating Plaintiff because of her protected activity constitutes retaliation prohibited by Title VII.

61. Defendants' actions have directly and proximately caused Plaintiff substantial past and future economic loss, including lost wages, benefits, and other compensation, including compensatory damages and non-pecuniary losses for emotional distress, and damage to her career and professional reputation, and humiliation, pain, and suffering, in an amount to be determined at trial.

62. Defendants' actions were taken with malice and were wanton, reckless, and in knowing disregard of Plaintiff's legal rights and, as such, render Defendant liable for punitive damages.

63. Plaintiff is also entitled to recover all attorneys' fees and costs expended in prosecuting this action, and such further and additional relief as allowed by law, in an amount to be determined at trial damages, including a loss of wages and benefits, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Wrongful Termination in Violation of Clear and Substantial Public Policy)**

64. Plaintiff hereby incorporates as though restated, each of the factual allegations set forth in the preceding paragraphs of the Complaint.

65. At all times relevant hereto, Plaintiff was an employee of Defendants.

66. As alleged more fully above, Plaintiff's employment was terminated by the Defendants on or about November 13, 2019.

67. Plaintiff's termination violated a clear and substantial public policy of the State of Utah, including, the Workers' Compensation Act, Utah Code § 34A-2-101 et seq., and more specifically Utah Code § 34A-2-114.

68. Specifically, the Utah Workers' Compensation Act provides remedies for employees injured on the job, and the legislature has specifically prohibited employers from "knowingly or intentionally" impeding or diminishing an employee's efforts to make a claim or receive workers' compensation benefits, intimidating, coercing or harassing an employee with the intent of preventing the employee from making a claim or receiving workers' compensation benefits, or discharging or retaliating against an employee because an employee claims or

attempts to claim workers' compensation benefits, amongst other things, pursuant to Utah Code § 34A-2-114.

69. By engaging in the conduct set forth above, including, reporting her workplace injury and seeking workers' compensation benefits provided under the Workers' Compensation Act, and receiving treatment for her workplace injuries, Plaintiff's conduct brought the Workers' Compensation Act into play.

70. Defendants' actions in terminating Plaintiff and otherwise retaliating against her for exercising her rights under the Workers' Compensation Act implicated this substantial and important public policy of the State of Utah, and Plaintiff's conduct in furtherance of such public policies resulted in her termination.

71. As a result of Defendants' unlawful conduct, Plaintiff suffered damages, including, lost pay and benefits, pecuniary and non-pecuniary damages, including damages for emotional distress, pain and suffering and humiliation, in an amount to be determined at trial.

72. Defendant's conduct was willful and malicious, or intentionally fraudulent or manifested a knowing and reckless indifference toward, and disregard of the rights of others, including Plaintiff, entitling Plaintiff to an award of punitive damages in an amount to be determined at trial.

72. Plaintiff is further entitled to an award of her reasonable attorneys' fees incurred in bringing this action.

## JURY DEMAND

Plaintiff requests trial by jury on issues so triable to jury pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.	For judgment in Plaintiff's favor and against Defendant for all causes of action asserted herein;

2.	For an award of all back pay and benefits lost by Plaintiff as a result of her unlawful termination, as well as any other economic damages in amount proved at trial;

3.	For an order reinstating Plaintiff to her former position, or in lieu of reinstatement, an order of front pay, including all wages, compensation and other economic benefits lost as a result of Defendants' actions and omissions;

4.	For an award of all non-economic damages caused by Defendants' conduct, including, compensatory damages, both pecuniary and non-pecuniary, in an amount to be determined at trial, including, damages for emotional distress, pain and suffering, as appliable;

5.	For an award of punitive damages in an amount to be determined at trial;

6.	For an award of pre- and post-judgment interest as allowed by law, as applicable;

7.	For an order awarding Plaintiff's attorney fees and costs of suit, including, expert witness fees, incurred in bringing this action, as applicable;

8.	For an order awarding such further and additional legal or equitable relief as the Court deems appropriate.

DATED this 12th day of November, 2020.

/s/   **Andrew W. Stavros**
Andrew W. Stavros
STAVROS LAW P.C.
*Attorney for Plaintiff Kasey Green*